UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

ROLAND HOCZA,

               Plaintiff,         06 Civ. 3340

   -against-                              OPINION

THE CITY OF NEW YORK,

               Defendant.

------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/26/08

A P P E A R A N C E S:

Attorneys for Plaintiff

QUELLER, FISHER, DIENST, SERRINS,
  WASHOR & KOOL, LLP
233 Broadway, Suite 1800
New York, N Y  10279
By: Barry Washor, Esq.

Ronai & Ronai, LLP
19 West 34th Street, Penthouse
New York, NY 10001
By: Peter I. Ronai, Esq.

Law Offices of William Cafaro
19 West 44th Street
Suite 1500
New York, NY 10022
By: William Cafaro, Sr., Esq.

Attorneys for Defendant

Corporation Counsel of The City of New York
100 Church Street
New York, NY 10007
By: Cynthia Goldman, Esq.

NYC Law Department
350 Jay Street
Brooklyn, NY 11201
By: Sean Patrick Greene

**Sweet, D.J.**

Plaintiff Roland Hocza ("Hocza" or the "Plaintiff") has moved under Fed. R. Civ. P. 56 for partial summary judgment on liability against defendant the City of New York (the "City" or the "Defendant"). Upon the facts and conclusions set forth below, the motion is granted.

**Prior Proceedings**

Plaintiff filed his complaint ("Complaint") against the City on May 2, 2006, asserting claims of negligence, violation of New York Labor Law sections 200, 240, 241, and 242-a, and 12 N.Y.C.R.R. Part 23. The City filed its answer on May 22, 2006, and a third-party complaint against Hocza's employer, C&Z Contractors, Inc. ("C&Z"), on October 19, 2006. The City and C&Z stipulated to the discontinuance of the third-party action on November 8, 2007, and the City moved to reinstate it on February 21, 2008. On March 28, 2008, the City's motion was granted.

Plaintiff brought this motion for partial summary judgment on January 28, 2008. The motion was heard and marked

2

fully submitted on February 6, 2008. Discovery in the main action is now complete.

**The Facts**

The facts are set forth in Plaintiff's Rule 56.1 Statement in Support of Motion for Summary Judgment, Defendant's Counterstatement of Material Facts, and accompanying affidavits.

Roland Hocza is a 31 year-old roofer who, in the course of his employment by C&Z, fell from the roof of a building referred to as "visit house" at the West Facility at Rikers Island Correctional Facility (the "Visit House") between approximately 9:30 and 10:00 a.m. on January 26, 2006.

Hocza arrived at the correctional facility at 8:00 a.m. that day, his first day at this particular construction site. Shortly after arriving, Hocza and three other workers carried equipment up a ladder and onto the roof. They then received instructions from their boss to install of a new layer of rubber for the roof. The boss, Csaba Muharay ("Muharay") left the construction site after approximately one hour and did not return. Neither Plaintiff nor the other workers knew what

that day's project would be until they arrived at the construction site.

Hocza had been putting down, unwinding, cutting and rolling roofing material for approximately 1 1/2 hours. During this time the wind was causing difficulties with unrolling the roofing material, and the flame on the torches was being blown out. Although Plaintiff does not recall the fall from the roof, he testified that as he tried to stand up, the wind gave him a push, and the next thing he remembered was waking up in the hospital. His co-worker, Laslo Varga ("Varga") had seen him rolling roofing material a few feet from the edge of the roof, and when he next looked back to the area where he had seen Hocza working, Hocza was gone. When Varga walked to the edge of the roof where he had last seen Hocza, he saw Hocza lying motionless on the ground approximately 18 feet below.

Assistant Deputy Warden Germaine Turnbull investigated the report that a civilian worker had fallen from a roof in the ordinary course of her duties. She responded to the Visit House and observed a civilian worker, later identified as Hocza, lying on the ground. Turnbull marked a photograph indicating the place she saw Hocza lying on the ground with paramedics standing over him.

4

The City of New York owned the Visit House and through its Department of Corrections, the City managed the business operations of the building on the date of the occurrence.

On the date of the occurrence, Hocza was an employee of C&Z, and Muharay was his boss. The City has contended that Hocza was either an employee or an independent contractor.

Hocza supervised the other workers in his boss' absence, but his duties did not include safety. Muharay was in charge of safety and the only one who ever provided any safety equipment or devices.

Muharay testified that he provided safety equipment and was familiar with OSHA's requirements, that in his opinion, fall protection was not required, that he made the final decision whether to use the safety netting, that he did not tell the workers to bring safety netting (the only fall protection discussed) to the roof on the date of Hocza's fall, nor could he recall whether safety netting was available on the roof, and that safety netting was in the van because that is where it was customarily put.

The roof Hocza was working on at the time of the occurrence was a flat roof and no fencing or netting was being used around the perimeter of the roof.

During the time he worked for C&Z, Hocza worked on pitched roofs and flat roofs. Although safety belts were normally provided when work was being done on pitched roofs, the usual practice was not to use any safety equipment for work on flat roofs. In the two years that plaintiff worked for C&Z, there were only two occasions on which safety fencing was used on flat roof jobs. Safety harnesses were not used on flat roof jobs. Other than these safety devices, Hocza was unaware of any other safety equipment ever used at C&Z for roofing work.

Hocza was not instructed by his boss, by the City of New York, the Department of Corrections, or anyone else to use any safety devices that would have provided any fall protection in the performance of his work at Defendant's building on January 26, 2006.

No protective devices or safety equipment of any kind that would have provided any fall protection were provided or made available to Hocza during the performance of his work at the place of the occurrence.

6

**Summary Judgment Standard**

Summary judgment is granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); SCS Commc'ns, Inc. v. Herrick Co., 360 F.3d 329, 338 (2d Cir. 2004). The courts do not try issues of fact on a motion for summary judgment, but, rather, determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [its] right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995). Summary judgment is appropriate where the moving party has shown that "little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no

genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Resid. Servs., L.P., 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citations omitted).

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Gibbs-Alfano v. Burton, 281 F.3d 12, 18 (2d Cir. 2002). However, "the non-moving party may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that its version of the events is not wholly fanciful." Morris v. Lindau, 196 F.3d 102, 109 (2d Cir. 1999) (quotation omitted).

**Labor Law 240(1) Was Violated**

Labor Law section 240(1) provides as follows:

1. All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and

8

> other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

It is well established that section 240(1) imposes a nondelegable duty on building owners and their agents to provide or cause to be furnished safety devices for workers at elevated work sites in order to protect them from being injured as a result of a fall. Ross v. Curtis-Palmer Hydro-Elec. Co., 618 N.E.2d 82 (N.Y. 1993); Zimmer v. Chemung County Performing Arts, 482 N.E.2d 898 (N.Y. 1985). The Court of Appeals has held that the statute imposes absolute liability in damages for injuries sustained by a worker upon an owner or contractor who has (1) failed to provide any safety devices for workers at a building worksite (2) where the absence of such devices is the proximate cause of injury to a worker. Zimmer, 482 N.E.2d at 899. See, e.g., Melson v. Sebastiano, 822 N.Y.S.2d 203, 205 (App. Div. 2006) (holding that trial court erred in failing to grant partial summary judgment on liability under section 240(1) where plaintiff established that no safety devices were in place to prevent employees from falling through roof and defendants failed to raise a triable issue of fact); D'Acunti v. N.Y. City School Constr. Auth., 751 N.Y.S.2d 459, 459-60 (App. Div. 2004) (affirming grant of partial summary judgment for plaintiff where plaintiff's slide down a roof resulted from the type of

9

extraordinary elevation-risk which section 240(1) was enacted to guard against, and plaintiff's fall was caused, at least in part, by the lack of safety devices); Smith v. Xaverian High Sch., 703 N.Y.S.2d 526, 527 (App. Div. 2000) (holding that plaintiff established a prima facie case by showing that he was engaged in construction work on a building, that defendant was the general contractor, no safety devices were supplied, and he fell approximately 20 feet from the roof); Johnson v. Packaging Corp. of Am., 710 N.Y.S.2d 699, 701 (App. Div. 2000) (holding that plaintiff was entitled to partial summary judgment where he fell from elevation during the course of repair work on a roof for which he was provided no safety devices).

**The City Failed to Provide Any Safety Devices**

The task Hocza was performing, the installation of new roofing material on the entire roof, constitutes "repair" of a building or structure, and is a protected activity within the purview of the statute. See Van Amerogen v. Donnini, 577 N.E.2d 1035 (N.Y. 1991); Marin v. Levin Props., LP, 812 N.Y.S.2d 645 (App. Div. 2006); Sequin v. Massena Aluminum Recovery Co. Inc., 645 N.Y.S.2d 630 (App. Div. 1996).

The Occupational Safety and Health Administration ("OSHA") required fall protection here. The applicable OSHA regulation states:

> Each employee on a walking/working surface (horizontal and vertical surface) with an unprotected side or edge which is 6 feet (1.8m) or more above a lower level shall be protected from falling by the use of guardrail systems, safety nets systems, or personal fall arrest systems.

29 CFR § 1926.501(b)(1).

The facts set forth above establish that Hocza was engaged in constructing a new roof for a building owned by the City, that no safety devices were provided to Hocza or the workers to prevent a fall, and that he fell from a height of approximately eighteen feet and sustained injuries.

**Proximate Cause Has Been Established**

The City's principal contention is that no evidence has been presented to establish proximate cause for Hocza's injury. The City relies on an expert opinion that the wind was not sufficient to cause the fall. While the evidence establishes that Hocza fell from the edge of the roof, the cause of his fall was unobserved and unknown to him as a consequence of his amnesia.

11

The evidence has established that Hocza was placing roofing material within a few feet of the roof's edge when he fell and that no fall protection was provided. Under these circumstances, the testimony of the City's expert fails to raise any triable questions of fact.

In Johnson v. Packaging Corp. of Am., the plaintiff alleged that his fall resulted from an electric shock, but there was evidence in the record that he may have told a treating psychologist that he fell after slipping on a wet surface. 710 N.Y.S.2d at 701. The Appellate Division noted that plaintiff had fallen from elevation -- whether as a result of an electric shock or slipping on a wet work surface -- during the course of work on a roof where he was provided no safety devices, and was therefore entitled to summary judgment. Id.

Similarly, here, the City's effort to cast doubt on the Plaintiff's theory as to why he fell fails to create an issue of triable fact. Hocza's injury was at least in part due to the absence of safety equipment. The City speculates that Hocza's injury may have been caused by an event other than a fall from the roof, but presents no evidence to support its theory.

12

In Briggs v. Haltermann, relied on by the City, the plaintiff was working on a ladder, not a roof, a ladder being one of the safety devices set forth in section 240(1). 699 N.Y.S.2d 795, 795-96 (App. Div. 1999). The court denied summary judgment because it was not yet clear whether the plaintiff's fall was due to a defective ladder. Id. Similarly, in Smith v. Hooker Chems. And Plastics Corp., also relied on by the City, there was a factual dispute as to whether the plaintiff's injuries occurred because of a defective safety device. 455 N.Y.S.2d 446, 448 (App. Div. 1982). Here, it has been established that no safety device was provided at all.

The fact that there may have been safety netting in the C&Z van, as Muharay testified, is insufficient to satisfy section 240(1).

> The statutory duty is not satisfied merely because a safety device of one sort or another was made available to the injured employee at the work site. "Proper protection" requires that the device must be appropriately placed or erected so that it would have safeguarded the employee, and that the furnished device itself must be adequate to protect against the hazards entailed in the performance of the particular task to which the employee was assigned.

Conway v. N.Y. State Teachers' Ret. Sys., 530 N.Y.S.2d 300, 302-03 (App. Div. 1988) (citation and emphasis omitted). See also Neville v. Deters, 572 N.Y.S.2d 256, 257 (App. Div. 1991) ("It is well settled that the mere presence of safety devices at the worksite does not diminish defendant's liability."); Arbusto v. Fordham University, 554 N.Y.S.2d 2, 3 (App. Div. 1990) ("The owner cannot escape liability by showing that a safety device of one sort or another was made available to the injured employee at the work site. To hold otherwise would necessarily shift to a worker the burden which the statute pointedly places upon the owner and contractor." (quotations omitted)).

**Conclusion**

The motion for partial summary judgment on liability is granted.

Submit partial judgment on notice.

The parties will meet and confer and report to the Court with respect to scheduling any further proceedings.

It is so ordered.

New York, N.Y.
June **24**, 2008

_____
ROBERT W. SWEET
U.S.D.J.