UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

ROLAND HOCZA,

              Plaintiff,              06 Civ. 3340

  -against-                              OPINION

THE CITY OF NEW YORK,

              Defendant.

------------------------------------X

THE CITY OF NEW YORK,

      Third-Party Plaintiff,

  -against-

C&Z CONTRACTORS, INC.,

      Third-Party Defendant.

------------------------------------X

A P P E A R A N C E S:

        Attorneys for Defendant/Third-Party Plaintiff the City
        of New York

        Michael A. Cardozo
        Corporation Counsel
        100 Church Street
        New York, NY 10007
        By:  John R. Urban, Esq.

        Attorneys for Third-Party Defendant C&Z Contractors,
        Inc.

        Barry, McTiernan & Moore
        2 Rector Street - 14th Floor
        New York, NY 10006
        By: James Burbage, Esq.

**Sweet, D.J.**

C&Z Contractors, Inc. ("C&Z" or "Third-Party Defendant") has moved pursuant to Fed. R. Civ. P. 56 for summary judgment dismissing the Third-Party Complaint of the City of New York (the "City" or "Third-Party Plaintiff") as barred by the New York Workers' Compensation Law § 11. On the facts and conclusions stated below, the motion is granted and the Third-Party Complaint is dismissed.

## I.  PRIOR PROCEEDINGS

Plaintiff filed his complaint ("Complaint") against the City on May 2, 2006, asserting claims of negligence, violation of New York Labor Law sections 200, 240, 241, and 242-a, and 12 N.Y.C.R.R. Part 23. The City filed its Answer on May 22, 2006, and a Third-Party Complaint against Hocza's employer, C&Z, on October 19, 2006. The City and C&Z stipulated to the discontinuance of the third-party action on November 8, 2007, and the City moved to reinstate it on February 21, 2008. On March 28, 2008, the City's motion was granted.

Plaintiff moved for partial summary judgment on the issue of liability against the City on January 28, 2008, and

1

that motion was granted by this Court's Opinion dated June 24, 2008.  See Hocza v. City of New York, No. 06 Civ. 3340 (RWS), 2008 WL 2557423 (S.D.N.Y. June 26, 2008).  The instant motion was filed October 15, 2008, and was argued and marked fully submitted on November 12, 2008.

**II.   THE FACTS**

The facts are set forth in greater detail in this Court's Opinion of June 24, 2008.  Familiarity with that Opinion is assumed.

Roland Hocza is a 31 year-old roofer who, in the course of his employment by C&Z, fell from the roof of a building (the "Visit House") at the West Facility at Rikers Island Correctional Facility on January 26, 2006.

The City owned the Visit House and through its Department of Corrections, managed the business operations of the building on the date of the occurrence.

On the date of the occurrence, Hocza was an employee of C&Z, and Muharay was his boss.  The City has contended that Hocza was either an employee or an independent contractor.

2

Hocza supervised the other workers in his boss' absence, but his duties did not include safety. Muharay was in charge of safety and the only one who ever provided any safety equipment or devices.

Muharay testified that he provided safety equipment and was familiar with OSHA's requirements, that in his opinion, fall protection was not required, that he made the final decision whether to use the safety netting, that he did not tell the workers to bring safety netting (the only fall protection discussed) to the roof on the date of Hocza's fall, nor could he recall whether safety netting was available on the roof, and that safety netting was in the van because that is where it was customarily put.

The roof Hocza was working on at the time of the occurrence was a flat roof and no fencing or netting was being used around the perimeter of the roof.

No protective devices or safety equipment of any kind that would have provided any fall protection were provided or made available to Hocza during the performance of his work at the place of the occurrence.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); SCS Commc'ns, Inc. v. Herrick Co., 360 F.3d 329, 338 (2d Cir. 2004). The courts do not try issues of fact on a motion for summary judgment, but, rather, determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [its] right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995). Summary judgment is appropriate where the moving party has shown that "little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no

4

genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Resid. Servs., L.P., 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citations omitted).

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Gibbs-Alfano v. Burton, 281 F.3d 12, 18 (2d Cir. 2002). However, "the non-moving party may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that its version of the events is not wholly fanciful." Morris v. Lindau, 196 F.3d 102, 109 (2d Cir. 1999) (quotation omitted).

## IV. DISCUSSION

The City's Third-Party Complaint against C&Z asserts a claim for common law indemnity for any damages sustained by Hocza due to C&Z or Hocza's negligence, other want of due care, or breach of statutory duties. See Third-Party Compl. ¶¶ 6-7.

C&Z contends that it is entitled to summary judgment on the City's indemnity claim pursuant to the 1996 amendments to

5

the New York Workers' Compensation Law.  Section 11 provides in relevant part:

> An employer shall not be liable for contribution or indemnity to any third person based upon liability for injuries sustained by an employee acting within the scope of his or her employment for such employer unless such third person proves through competent medical evidence that such employee has sustained a "grave injury" which shall mean only one or more of the following: death, permanent and total loss of use or amputation of an arm, leg, hand or foot, loss of multiple fingers, loss of multiple toes, paraplegia or quadriplegia, total and permanent blindness, total and permanent deafness, loss of nose, loss of ear, permanent and severe facial disfigurement, loss of an index finger or an acquired injury to the brain caused by an external physical force resulting in permanent total disability.

N.Y. Workers' Compensation Law § 11 ("Section 11").  C&Z contends that the City has failed to show that Hocza suffered grave injury.

The City argues that Section 11 is not applicable where a property owner is held vicariously liable to an injured worker solely by virtue of an obligation imposed by New York Labor Law § 240(1), relying on Nat'l Union Fire Ins. Co. of La. v. Universal Fabricators, Inc., 05 Civ. 3418 (SAS), 2007 WL 1975566 (S.D.N.Y. July 6, 2007) and Frank v. Meadowlakes Dev. Corp., 849 N.E.2d 938 (N.Y. 2006).

The first case relied upon by the City, Nat'l Union Fire Ins. Co. of La. v. Universal Fabricators, Inc., involved a contract that included an express indemnity provision. 05 Civ. 3418 (SAS), 2007 WL 2059840, at *1 (S.D.N.Y. July 18, 2007).[1] Section 11 specifically excludes contractual claims for indemnity. See Section 11 ("For the purposes of this section the terms 'indemnity' and 'contribution' shall not include a claim or cause of action for contribution or indemnification based upon a provision in a written contract entered into prior to the accident or occurrence by which the employer had expressly agreed to contribution to or indemnification of the claimant or person asserting the cause of action for the type of loss suffered."). There is no contractual basis for indemnity asserted here, and National Union is therefore inapposite.

Frank, the second case relied upon by the City, involved an action "commenced in 1992 before the 1996 amendment to Workers' Compensation Law Section 11 and thus [third-party plaintiff's] right to indemnification [was] not affected by the amendment." Frank, 849 N.E.2d at 939 n.1.

---

[1] The National Union opinion relied on by City was withdrawn by an Order dated July 18, 2007, see Nat'l Union Fire Ins. Co. of La. v. Universal Fabricators, Inc., 05 Civ. 3418 (S.D.N.Y. July 18, 2006) (order withdrawing July 6 Opinion and ordering that it be stricken from the docket sheet), and superseded by the opinion cited above.

7

By its plain language, Section 11 applies to the City's common-law indemnity claim. See Sikorski v. Burroughs Drive Apartments, Inc., 762 N.Y.S.2d 718 (App. Div. 2003) (dismissing property owner's common law indemnity and contribution claims against employer pursuant to Section 11). The City must therefore prove through competent medical evidence that Hocza has sustained a "grave injury" in order to maintain its claim.

"Injuries qualifying as grave are narrowly defined in Workers' Compensation Law § 11." Castro v. United Container Mach. Group, Inc., 761 N.E.2d 1014, 1015 (N.Y. 2001) (holding that loss of multiple fingertips does not meet the definition of grave injury). "The grave injuries listed are deliberately both *narrowly and completely described*. The list is exhaustive, not illustrative; it is not intended to be extended absent further legislative action." Id. at 1016 (emphasis in original) (quoting Governor's Approval Mem., ch. 635, L. 1996, reprinted in 1996 N.Y. St. Legis. Ann. 174, at 460). The parties agree that, in the context of this case, the "grave injury" question turns on whether Hocza has suffered a total and permanent loss of use of his hands. See Third-Party Def. Mot. 2; Third-Party

8

Pl. Opp. 6. The City argues that there is conflicting testimony on the issue, which should therefore be put to a jury.

The ambiguity in the New York courts' case law as to what constitutes "permanent and total loss of use" of a hand was recently the subject of a thorough and thoughtful analysis by the Honorable David G. Trager in <u>Mustafa v. Halkin Tool, Ltd.</u>, 00 Civ. 4851 (DGT), 2004 WL 2011384 (E.D.N.Y. Sept. 7, 2004). In <u>Mustafa</u>, plaintiff sustained crush injuries to both hands and wrists when he reached for a piece of metal that fell behind a press brake machine he was operating. <u>Id.</u> at *1. The third-party defendant in that action moved for summary judgment on the issue of whether plaintiff had suffered "total and permanent loss of use" of his left hand. <u>Id.</u> Judge Trager noted that "total loss of use" can be interpreted "as the loss of functional use - the inability to accomplish a task with the hand" or "the loss of all movement in the hand." <u>Id.</u> at *5. The New York Court of Appeals has not had occasion to analyze the definition, but, as Judge Trager concluded, the relevant appellate cases "lean toward" the functional use interpretation. <u>Id.</u> at *6. Resolution of the proper interpretation is not necessary for the purposes of the instant dispute, however, as even under the functional use interpretation there is no

9

evidence that Hocza has suffered total and permanent loss of use of his hands.

In Mustafa, the third-party defendant's expert, Dr. Grad, opined that plaintiff's grip strength in his left hand registered at an average of eight pounds, and that he could pinch approximately three pounds between his left thumb and index fingers. Id. at *8. Dr. Grad testified that plaintiff had some use of his left hand despite severe impairment, and that he could use his left hand for light daily tasks, such as using a washcloth and brushing his teeth. Dr. Grad also testified that he believed plaintiff could perform vocational tasks with both hands, such as checking coats, answering the phone or handling paper. Id.[2] Third-party plaintiff's expert, DeChello, found that plaintiff could form only one pinch position out of three with his left hand, at a strength of 1.5 pounds. She also determined that his left hand grip strength was ten pounds, less than ten percent of the normal strength of the average male. Id. at *9. She concluded that plaintiff "is unable to use his left hand functionally for any type of grasp, prehension, dexterity, or bimanual tasks." Id. (quotation omitted). Judge Trager held that the experts' conflicting

---

[2] Another expert for third-party plaintiff testified that "the current function of the left hand is such that he is capable of carrying out light work activities." Id. at *3.

10

opinions as to whether plaintiff suffered permanent and total loss of use of his left hand rendered "grave injury" a question of fact for the jury to decide. Id. at *10.

Similarly, in Sexton v. Cincinnati Inc., the Appellate Division for the Fourth Department applied the functional use interpretation and held that third-party plaintiff raised an issue of fact by submitting the affidavit of a medical expert who determined that plaintiff had not retained even minimal use of his hands. 769 N.Y.S.2d 773, 774 (App. Div. 2003).

In Trimble v. Hawker Dayton Corp., the Appellate Division for the Third Department also applied a functional use interpretation, holding that plaintiff's injuries did not rise to the level of "grave injury." 761 N.Y.S.2d 409 (App. Div. 2003). The court held that third-party defendant had met its burden by proving,

> by competent admissible evidence, that plaintiff's injury, though severe and disabling, did not rise to the level of grave injury because he ha[d] some use of his right hand. . . . Specifically, the records of plaintiff's treating physician . . . and the report of a functional capacity evaluation state[d] that plaintiff [was] able to extend and close his right thumb and fingers sufficiently to grasp, hold and carry objects in his right hand."

11

Id. at 410. The court held that the opinion of third-party plaintiff's expert, who stated that plaintiff "ha[d] a total loss of use of the right hand as it is commonly understood," was conclusory because he did not dispute the findings in the medical records that plaintiff had some use of his hand. Id. The court concluded that, given the plain meaning of Section 11, it could "not agree that some, albeit minimal, use of a hand is sufficiently equivalent to a total loss of use to qualify as grave injury." Id.

Here, the parties' submissions provide ample evidence that although Hocza did sustain serious injuries, he retains some functional use of both hands. There is no evidence, not even conclusory expert opinion, to support the contention that Hocza has a total and permanent loss of use of either hand. Summary judgment is therefore appropriate.

Hocza has testified that is able to dress himself, see Decl. of James Burbage ("Burbage Decl."), Ex. Q at 95, and bathe himself, with the exception of his feet. Id., Ex. Q at 96. From a review of the whole record, it appears that his inability to bathe his feet is a result of back injuries rather than damage to his hands.

In a letter to the City dated October 2, 2007, Dr. Joel Grad,[3] one of the City's experts, stated that Hocza "relates current complaints today referable to the wrists, to wit, bilateral wrist pain usually more pronounced on the left; difficulty lifting and inability to put pressure on the wrists with the wrists in their position of maximum extension." Id., Ex. M at 6. Dr. Grad performed a physical examination of "both upper extremities," and noted, inter alia, that "[a] full range of flexion extension of all digits could be accomplished bilaterally. The elbows, wrists and digital joints were stress tested through active ranges of motion and found to be stable in all planes." Id. Dr. Grad also wrote:

> Serial determinations of grip strength were assessed . . . . These registered at 38, 40 and 39 lbs. on the right; 37, 39 and 38 lbs. on the left. Serial determinations of key pinch were assessed . . . . This resulted in responses registered at 20, 18, and 19 lbs. on the right; 18, 17, and 18 lbs. on the left. . . . Mr. Hocza appeared to be generating forceful contractions in keeping with maximal cooperative efforts during these assessments bilaterally.

Id.

Dr. Grad also opined in a letter dated January 18, 2008, that Hocza's injury "has resulted in a partial permanent

---

[3] It appears that this expert is the same Dr. Grad that testified in Mustafa.

13

impairment of the wrists/hands," and that Hocza would "benefit from vocational rehabilitation." Id., Ex. M at 1.

On March 3, 2008, David Book, of Chestnut Rehabilitation Services, stated in a report to the City that Hocza "does some limited cleaning around the house" and "indicated that he dresses and bathes himself with the assistance of his girlfriend. He advises that he has difficulty with putting on his socks in rainy weather. He has difficulty with fastening his clothing and dressing himself." Id., Ex. N at 3. An October 1, 2008 report by Book also stated that Hocza "indicated that he dresses and bathes himself with assistance of his girlfriend." Id., Ex. P at 6.

In a note dated May 17, 2007, Dr. Kevin Wright, Hocza's treating physician, noted that Hocza "is capable of making a full fist and extending his fingers fully." Decl. of John R. Urban ("Urban Decl."), Ex. D at 11. In a note dated August 16, 2007, Dr. Wright noted that Hocza "is capable of flexing and extending his fingers without difficulty." at 7.

The City has failed to adduce any evidence that Hocza has suffered permanent and total use of his hands. While the City does point to inconsistencies between the experts'

14

accounts, none of these inconsistencies bear on the issue of whether Hocza has suffered total and permanent loss of use of his hands.

Finally, although it did not raise the issue in its papers, at oral argument the City asserted that Section 11 is inapplicable because Hocza was an independent contractor, not an employee, of C&Z. "Normally, the Court will not consider arguments raised for the first time in a reply brief, let alone at or after oral argument." Nobel Ins. Co. v. City of New York, 00 Civ. 1328 (KMK), 2006 WL 2848121, at *16 (S.D.N.Y. Sept. 29, 2006) (quotation and alterations omitted) (declining to consider argument advanced for the first time at oral argument); see also Desieno v. Crane Mfg. & Serv. Corp., 127 Fed. App'x 551, 553 n.1 (2d Cir. 2005) (same); United States v. Pascarella, 84 F.3d 61, 73 (2d Cir. 1996) (same). The Court declines to consider the City's belated argument.

## V.  CONCLUSION

For the above stated reasons, the motion for summary judgment of third-party defendant C&Z is granted, and the third-

15

party complaint is dismissed as barred by Workers' Compensation Law § 11.

Submit judgment on notice.

It is so ordered.

New York, N.Y.
December 8, 2008

ROBERT W. SWEET
U.S.D.J.