USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/20/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

ROLAND HOCZA,

                Plaintiff,           06 Civ. 3340

   -against-                             OPINION

THE CITY OF NEW YORK,

                Defendant.

------------------------------------X

A P P E A R A N C E S:

       Attorneys for Plaintiff

       Queller, Fisher, Washor, Fuchs & Kool, LLP
       The Woolworth Building
       233 Broadway - 18th Floor
       New York, New York  10279
       By: Barry Washor, Esq.


       Attorneys for Defendant

       Michael A. Cardozo
       Corporation Counsel
       100 Church Street
       New York, NY 10007
       By:  John R. Urban, Esq.

**Sweet, D.J.,**

Roland Hocza ("Hocza" or the "Plaintiff") filed his complaint (the "Complaint") against the City of New York (the "City") on May 2, 2006, asserting claims of negligence and violations of New York Labor Law sections 200, 240, 241, and 242-a, and 12 N.Y.C.R.R. Part 23. The City filed its Answer on May 22, 2006, and a Third-Party Complaint against Hocza's employer, C&Z Contractors, Inc. ("C&Z"), on October 19, 2006. The City and C&Z stipulated to the discontinuance of the third-party action on November 8, 2007, and the City moved to reinstate it on February 21, 2008. On March 28, 2008, the City's motion was granted.

Plaintiff moved for partial summary judgment on the issue of liability against the City on January 28, 2008, and that motion was granted by this Court's Opinion dated June 24, 2008. See Hocza v. City of New York, No. 06 Civ. 3340 (RWS), 2008 WL 2557423 (S.D.N.Y. June 26, 2008). On October 15, 2008, C&Z filed a motion for summary judgment dismissing the Third-Party Complaint, which was granted on December 8, 2008. See Hocza v. City of New York, No. 06 Civ. 3340 (RWS), 2008 WL 5188148 (S.D.N.Y. Dec. 10, 2008).

Trial on the issue of damages is scheduled to begin January 20, 2009. The parties have raised a number of issues to be resolved in advance of trial. The subject of this opinion is the City's request to introduce evidence related to Plaintiff's immigration status as relevant to the calculation of Plaintiff's future loss of earnings and medical expenses.

It is undisputed that Plaintiff is an undocumented alien. The City seeks to present evidence that as such, Plaintiff is subject to removal and, should he be removed, he will be barred from seeking readmission to the country for a period of ten years. According to the City, this is relevant to the question of whether Plaintiff should be awarded damages based on projected future earnings in the United States.

New York courts have repeatedly held that facts related to immigration status are relevant to the question of lost future earnings. See, e.g., Collins v. New York City Health and Hospitals Corp., 607 N.Y.S.2d 387 (App. Div. 1994). In Collins, plaintiff brought an action to recover damages for medical malpractice and wrongful death of the decedent, an illegal immigrant who had been employed in the United States prior to his death. The Appellate Division overturned the trial court's grant of summary judgment, which limited plaintiff's

evidence of lost earnings to the amount the decedent lawfully could have earned in his country of origin.  The question of whether any wages the decedent might have earned would have been the product of illegal activity, "as well as the length of time during which the decedent might have continued earning wages in the United States, and the likelihood of his potential deportation, [we]re factual issues for resolution by the jury under all of the circumstances of the case as developed by a full trial."  Id. at 388; see also Public Adm'r of Bronx County v. Equitable Life Assurance Soc'y, 595 N.Y.S.2d 478 (App. Div. 1993) (holding that plaintiff administrator should be permitted to offer evidence of any wages that decedent, an alien working in the United States on an apparently illegal basis, might have earned, and that it is for the jury to weigh defense proof that decedent would have earned those wages, if at all, on an illegal basis); Cano v. Mallory Mgmt., 760 N.Y.S.2d 816, 818 (N.Y. Sup. 2003) ("The law clearly states that while the plaintiff's status is not a bar to recovery it may act as a factual item to be presented to the trier of fact.").

However, "a plaintiff's status as an illegal alien, in and of itself, cannot be used to rebut a claim for future lost earnings."  Klapa v. O & Y Liberty Plaza Co., 645 N.Y.S.2d 281, 282 (N.Y. Sup. 1996).  In Klapa, plaintiff was a Polish national

who had been living and working in the United States illegally. Plaintiff suffered injuries when he fell from a scaffold while removing asbestos at a construction site owned and operated by defendants. As a part of his claim for damages, plaintiff sought recovery of future lost earnings. Liability was determined on a motion for summary judgment. Prior to trial on the issue of damages, plaintiff moved for an order in limine to prevent defendants from mentioning or presenting evidence as to his status as an illegal alien. Defendants argued that New York law allowed them to present evidence of plaintiff's immigration status to the jury with regard to his claim for lost wages. Defendant also argued that based on the evidence, the jury could determine that plaintiff was subject to deportation and therefore limit recovery for future lost wages to the Polish rate of pay. The court granted the motion:

> The fact that a plaintiff is deportable does not mean that deportation will actually occur. Further, whatever probative value illegal alien status may have is far outweighed by its prejudicial impact. Therefore, in order to rebut such a claim defendants must be prepared to demonstrate something more than just the mere fact that the plaintiff resides in the United States illegally. Absent such a showing, a defendant will be precluded from presenting to the jury evidence which would indicate a plaintiff's immigration status.

Id. (citations omitted); see also Asgar-Ali v. Hilton Hotels Corp., 2004 N.Y. Slip Op. 51061 (N.Y. Sup. 2004) (following Klapa and denying discovery related to injured worker's

immigration status where there was no indication that worker used fraudulent documents to obtain employment, or that deportation proceedings had begun or were contemplated); Clemente v. California, 707 P.2d 818 (Cal. 1985) (upholding preclusion of questioning about tort plaintiff's immigration status where he was employed in United States prior to his two accidents, there was no evidence he had intention of leaving country, and possibility that he might at some point be deported was so remote as to make issue of citizenship irrelevant to damages question; such testimony, even if marginally relevant, was highly prejudicial); Peterson v. Neme, 281 S.E.2d 869, 872 (Va. 1981) (affirming ruling that evidence of tort plaintiff's immigration status was inadmissible because it was irrelevant to plaintiff's right to recover damages for lost wages, and noting that prejudicial impact of evidence outweighed its probative value); Salas v. Hi-Tech Erectors, 177 P.3d 769 (Wash. Ct. App. 2008) ("The issue of immigration status is divisive and prejudicial. We conclude that evidence of a party's illegal immigration status should generally be allowed only when the defendant is prepared to show relevant evidence that the plaintiff, because of that status, is unlikely to remain in this country throughout the period of claimed lost future income.").

The City has proffered no evidence other than the mere

fact of Hocza's undocumented status. The above cases make clear that, standing alone, Hocza's immigration status does not raise a triable issue of fact as to whether Hocza will remain in the country. See Asgar-Ali, 2004 Slip. Op. 51061 at *3 ("[U]ndocumented immigrants may sue and recover for future lost earnings at the rate of pay they were receiving in the United States so long as they are not subject to imminent deportation hearings. Defendants bear the burden of demonstrating with concrete evidence that plaintiff's deportation is imminent and not just speculative or conjectural." (quotation and alterations omitted)). Any probative value that Hocza's immigration status might have is outweighed by the obvious prejudice that would flow from its use to speculate as to Hocza's removal from the country.

The City has submitted a legal brief from the law firm of Fragomen, Del Rey, Bernsen & Loewy, LLP, by which it attempts to demonstrate that, should removal proceedings be commenced, Hocza would be subject to deportation. However, it is not for the City to try the question of Hocza's removability to the jury in this case. To paraphrase Justice Acosta's opinion in Asgar-Ali, if the City were truly interested in Hocza's immigration status, it would have established a process consistent with the

immigration laws to ascertain third-party defendant C&Z's employees' authorizations to work in the United States. See id.

The City misinterprets Madiera v. Affordable Hous. Found., Inc., 469 F.3d 219 (2d Cir. 2006) and Balbuena v. IDR Realty LLC, 845 N.E.2d 1246 (N.Y. 2006) as indicating that, in order to avoid conflict with federal immigration law, the Court is required to instruct the jury to consider the fact of a plaintiff's removability in determining what, if any, lost United States earnings should be compensated.

Madiera and Balbuena both addressed whether Hoffman Plastic Compounds, Inc. v. NLRB, 535 U.S. 137 (2002), requires the conclusion that federal immigration law prohibiting the employment of undocumented aliens precludes state tort or labor law from awarding an injured undocumented worker compensatory damages for lost earnings at United States pay rates.[1]  Both courts answered the question in the negative. Balbuena noted that any conflict between federal immigration law and a lost wage claim can be alleviated by giving litigants the opportunity to present facts as to a plaintiff's immigration status:

---

[1] For present purposes, it is not necessary to rehash the lengthy and thoughtful preemption analyses in Madiera and Balbuena. The facts presented here would not change their calculus. As the Second Circuit noted, "there is simply no federal interest in absolving contractor and site owner defendants of their § 240(1) duty." Madiera, 469 F.3d at 248.

>An undocumented alien plaintiff could, for example, introduce proof that he had subsequently received or was in the process of obtaining the authorization documents required by [the Immigration Reform and Control Act of 1986] and, consequently, would likely be authorized to obtain future employment in the United States. Conversely, a defendant in a Labor Law action could, for example, allege that a future wage award is not appropriate because work authorization has both been sought or approval was sought but denied. In other words, a jury's analysis of a future wage claim proffered by an undocumented alien is similar to a claim asserted by any other injured person in that the determination must be based on all of the relevant facts and circumstances presented in the case.

Balbuena, 845 N.E.2d at 1259. Madiera cited this language as demonstrating that "New York law for compensating personal injury specifically [seeks] to avoid any conflict with federal immigration law by instructing juries to consider the fact of a plaintiff's removability in determining what, if any, lost United States earnings should be compensated." 469 F.3d at 228.

The City reads the Second Circuit's language to indicate that its conclusion rested at least in part on the fact that the jury was instructed that its damages award could take into consideration plaintiff's removability. However, the underlying quote from Balbuena demonstrates that such an instruction should only be given when justified by the facts presented. Further, the Madiera court seems to have used "removability" as shorthand for "immigration status." Viewing

the language in context, neither court indicated that the issue of potential deportation, as opposed to the other potential impacts of a plaintiff's immigration status, is of special significance. In sum, neither case held that a claim for lost earnings by an undocumented alien should be treated differently than such a claim "by any other injured person."

The City may not discuss or inquire into Hocza's immigration status with respect to the possibility that he will be deported. However, Hocza's immigration status may be relevant to the question of the job opportunities he would have had in this country. The parties may therefore address Hocza's immigration status with respect to its impact on opportunities for employment in the United States.

The City also seeks to present evidence with regard to Hocza's unlawful presence in the United States, arguing that the question of whether he has willfully misrepresented a material fact or perpetrated a fraud by reason of his unlawful presence in the United States bears on his credibility. Evidence of a witness's character for truthfulness is governed by Fed. R. Evid. 608. The City may inquire as to specific instances of conduct that are relevant to the witness's character for veracity, but it may not introduce extrinsic evidence as to that

conduct. See 4 J. Weinstein & M. Berger, Weinstein's Federal Evidence § 608.22 (Joseph M. McLaughlin, ed., 2d. ed. 2008).

## Conclusion

For the above-stated reasons, the City will be precluded from presenting evidence related to Hocza's immigration status, except for the limited purpose of addressing its effect on job opportunities in the United States.

It is so ordered.

**New York, N.Y.**
**January** /9 **, 2009**

_____
ROBERT W. SWEET
U.S.D.J.